IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PRECISION WEATHER SOLUTIONS,
INC.,

                    **Plaintiff**,

v.

HUDSON ISURANCE COMPANY and
ODYSSEY GROUP HOLDINGS, INC.,

                    **Defendants**.

Case No. 24-2258-DDC-GEB

## MEMORANDUM AND ORDER

Plaintiff Precision Weather Solutions, Inc. developed a state-of-the-art software platform to manage and forecast agricultural weather risks. It zealously safeguarded the trade secrets employed by its technology. But those trade secrets found their way into a competitor's product. Currently, plaintiff here is litigating against that competitor in a separate proceeding based in Canada. Plaintiff now ropes in two of the competitor's customers and investors in this case's trade-secret controversy—defendants Hudson Insurance Company and Odyssey Group Holdings, Inc. Defendants move for dismissal under Fed. R. Civ. P. 12(b)(6), arguing that plaintiff hasn't alleged that they used plaintiff's trade secrets or acted with the requisite knowledge. They also contend that the competitor who stole plaintiff's trade secrets is an indispensable party and ask the court to dismiss the Complaint under Rule 12(b)(7). The court grants in part and denies in part defendants' Motion to Dismiss (Doc. 27). The court explains this result, below.

It starts with a summary of the Complaint's allegations.

I.        **Background**

The following facts come from plaintiff's Complaint (Doc. 1).  The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to Plaintiff[], and draw[s] all reasonable inferences from the facts in favor of Plaintiff[]."  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (citation omitted).

Plaintiff is a Canadian corporation.  Doc. 1 at 2 (Compl. ¶ 4).  It "has worked tirelessly" since its inception to develop "proprietary meteorological data services."  *Id.* at 1, 4 (Comp. ¶¶ 1, 12).  Plaintiff maintains a series of stations and sensor systems, which generate "high quality meteorological data[.]"  *Id.* at 4 (Compl. ¶ 14).  It incorporates this data into its platform, which includes "proprietary software, applications, methods, models, algorithms[,] and other intellectual property."  *Id.* at 5 (Compl. ¶ 14).  Plaintiff's trade secrets include: a system of meteorological and climatological sensors; the proprietary architecture of plaintiff's platform and software and its graphical user interface; a weather alerting methodology; and proprietary algorithms and parameters.  *Id.* at 5–6 (Compl. ¶ 15).  Plaintiff took reasonable measures to safeguard its secret, proprietary technology, which it licenses on a subscription basis.  *Id.* at 6 (Compl. ¶¶ 16, 18).

This case's trade-secret saga first involves a nonparty, Farmers Edge Inc., and its subsidiary, Farmers Edge (US), Inc. (collectively, "Farmers Edge").  *Id.* at 7 (Compl. ¶¶ 19–20).  Farmers Edge is an agronomy-services company.[1]  *Id.* (Compl. ¶ 19).  Farmers Edge was struggling.  *Id.* (Compl. ¶¶ 19–21).  It "did not have its own valuable intellectual property" and couldn't "differentiate itself in a competitive marketplace."  *Id.* (Compl. ¶¶ 19–20).  Farmers

---

[1]        "Agronomy" is the "branch of agriculture that deals with field crop production and soil management."  *Agronomy*, Britannica, https://www.britannica.com/science/agronomy [https://perma.cc/XX2B-U5ZU] (last visited Aug. 13, 2025).

Edge "had no internal capability, expertise, or resources to develop competitive software solutions, and as a result, faced inevitable failure." *Id.* (Compl. ¶ 20). Farmers Edge "knew it did not have the capability to independently create a similarly valuable product to compete with" plaintiff. *Id.* (Compl. ¶ 21).

So Farmers Edge engaged plaintiff's services. *Id.* at 8 (Compl. ¶ 23). Farmers Edge did so, however, as subterfuge to achieve its real goal: stealing plaintiff's trade secrets so it could develop its own competing products. *Id.* (Compl. ¶¶ 23, 25). Farmers Edge's internal communications allegedly reveal how flagrant its strategy was. *Id.* at 12–13 (Compl. ¶¶ 39–42). Farmers Edge allegedly used plaintiff's platform brazenly to steal trade secrets and build competing platforms called FarmCommand and eventually InsurTech. *Id.* at 10, 11–14 (Compl. ¶¶ 31, 34, 36–47). Defendant Odyssey partnered with Farmers Edge "to deploy and use" Insurtech, while defendant Hudson was "involved in the advertising and selling of InsurTech." *Id.* at 16 (Compl. ¶¶ 53–54). Both defendants "used InsurTech in performing their crop insurance business." *Id.* at 17 (Compl. ¶ 56).

Plaintiff alleges that defendants knew—or should have known—that Insurtech was built on stolen trade secrets. *Id.* at 25 (Compl. ¶ 83). The Complaint justifies this conclusion in three ways. *First*, defendants needed to comply with strict insurance regulations that included due-diligence duties. *Id.* at 19–21 (Compl. ¶¶ 62–67). *Second*, defendants—and their parent company, Fairfax—invested significantly in Farmers Edge. *Id.* at 21–25 (Compl. ¶¶ 69–83). And *third*, two ongoing lawsuits against Farmers Edge—one in Canada and one in Virginia—informed defendants that they were using stolen trade secrets. *See id.* at 25 (Compl. ¶ 83).

Here, plaintiff asserts two functionally identical claims—one under the federal Defend Trade Secrets Act (DTSA) and one under the Kansas Uniform Trade Secrets Act (KUTSA). *Id.* at 28–34 (Compl. ¶¶ 91–122).

Defendants—invoking Rule 12(b)(6) and Rule 12(b)(7)—argue the court should dismiss the Complaint. The court begins with defendants' Rule 12(b)(6) arguments, first.

## II.    Rule 12(b)(6) Legal Standard

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

4

elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.    Rule 12(b)(6) Analysis

The parties agree the elements required to state a claim under the KUTSA and DTSA are the same.  Doc. 19 at 10; Doc. 29 at 13–14; *see also API Ams. v. Miller*, 380 F. Supp. 3d 1141, 1147–48 (D. Kan. 2019) ("The elements required to establish a claim for misappropriation are essentially the same under both the DTSA and the KUTSA.").  To state a claim under the DTSA or KUTSA, plaintiff must plead:  "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known that the trade secret was acquired by improper means."  *API Ams.*, 380 F. Supp. 3d at 1148 (footnote omitted).  Because the parties don't separate their KUTSA and DTSA arguments, the court analyzes the claims together. *Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1088 n.8 (10th Cir. 2025) (analyzing Oklahoma UTSA and DTSA claims together where neither party challenged the district court's joint analysis or made "separate arguments for the DTSA and OUTSA claims").[2]

---

[2]    Courts have offered slightly different formulations of the elements required to state a trade-secret claim.  For instance, our Circuit recently explained the elements of a DTSA claim this way:  "To establish a claim under the DTSA, the plaintiff must demonstrate '(1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secrete implicates interstate or foreign commerce.'" *Double Eagle*, 134 F.4th at 1087 (quoting *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 141 (4th Cir. 2023)).  This articulation of the elements is functionally equivalent to the formulation the parties offer because "misappropriation" requires improper acquisition, disclosure, or use of a trade secret.  18 U.S.C. § 1839(5).  (The Circuit's listing expressly includes, as its third element, the interstate-commerce requirement, which isn't a component of KUTSA).  *Double Eagle* also cited *API Americas* to support its construction of the DTSA elements.  134 F.4th at 1087 (citing *API Ams.*, 380 F. Supp. 3d at 1147–48).  Regardless, the court's adoption of the parties' legal framework doesn't "imply that these elements invariably govern; [the court] instead accepts the parties' agreement on these elements."  *Sturdivant v. Fine*, 22 F.4th 930, 936 n.6 (10th Cir. 2022) (quotation cleaned up).

Defendants argue that plaintiff has failed to state a claim for relief for two reasons:  (1) plaintiff hasn't alleged that defendants "used" or "acquired" its trade secrets; and (2) plaintiff hasn't alleged that defendants knew or should have known that Farmers Edge misappropriated plaintiff's trade secrets.  Doc. 19 at 10–15.  The court addresses these arguments, in turn, starting with the use-or-acquisition argument.

## A.    "Use" or "Acquire"

The Complaint plausibly alleges defendants used or acquired plaintiff's trade secrets.  As alleged, Farmers Edge and Hudson partnered "to deploy and use InsurTech throughout the United States in Hudson's lucrative crop insurance business."  Doc. 1 at 16 (Compl. ¶ 53).  And Hudson contributed to this partnership by advertising and selling InsurTech.  *Id.* (Compl. ¶ 54).  Agents for both defendants employed "InsurTech in performing their crop insurance business."  *Id.* at 17 (Compl. ¶ 56).  Deploying and advertising InsurTech constitutes "use" within the meaning of the DTSA and KUTSA.  *See* Restatement (Third) of the Unfair Competition § 40 cmt. c (A.L.I. 1995) ("As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use' . . . .  Thus, marketing goods that embody the trade secret, . . . , or soliciting customers through the use of information that is a trade secret . . . constitute 'use.'").

Defendants argue that plaintiff hasn't alleged they "ever had access to the technical details, data sources, or source code" employed by plaintiff's technology.  Doc. 19 at 11.  So, defendants argue that plaintiff has alleged—at best—that defendants used Farmers Edge's technology but not the "*actual trade secrets* [plaintiff] alleges" Farmers Edge misappropriated.  *Id.* (emphasis in original).  Defendants rely heavily on *Silvaco Data Systems v. Intel Corp.*, 109 Cal. Rptr. 3d 27 (Cal. Ct. App. 2010).  *Id.* at 11–12.

In *Silvaco*, plaintiff developed and marketed computer applications for designing electronic circuits and systems.  109 Cal. Rptr. 3d at 34.  Plaintiff alleged that a third-party company had misappropriated plaintiff's trade secrets and incorporated them into a competing software product.  *Id.* at 34–35.  Plaintiff secured a judgment against the third-party company. *Id.* at 35.  Plaintiff then sued Intel, alleging that Intel had misappropriated plaintiff's trade secrets by using the third-party company's software.  *Id.*  The California Court of Appeals rejected this theory of liability.  *Id.* at 40–46.  It explained that Intel hadn't "used" plaintiff's trade secrets merely by running software that "'incorporated' or 'contained' its trade secrets."  *Id.* at 40.  The California court offered this analogy to explain its reasoning:  "A coach who employs [a stopwatch] to time a race certainly makes 'use' of it, but only a sophist could bring himself to say that coach 'uses' trade secrets involved in the manufacture of the watch."  *Id.* at 41.

*Silvaco* thus stands for the proposition that actual disclosure of the trade secret itself is a prerequisite to "use" of the trade secret.  No liability attaches when a party employs a product built on trade secrets if the product itself doesn't reveal the trade secrets.  *See Dur-A-Flex, Inc. v. Dy*, 321 A.3d 295, 334 (Conn. 2024) ("[A] defendant cannot 'use' a trade secret . . . if the defendant does not have knowledge of the trade secret itself.  That is, the defendant must actually or constructively possess the information that constitutes the trade secret, and not merely use or possess a product that embodies the trade secret but does not disclose to the defendant any material aspect of the trade secret itself.").  So, one must have actual disclosure of the trade secret itself to incur liability under these trade-secrets statutes.  *See Silvac*o, 109 Cal. Rptr. 3d at 45 (concluding that trade-secret liability requires knowledge of the trade secret and without knowledge, one cannot "use" a trade secret); *see also Dur-A-Flex*, 321 A.3d at 334.  Even so, defendants aren't entitled to win their Motion to Dismiss.  The court agrees with plaintiff.

*Silvaco* is distinguishable because the Complaint plausibly suggests that plaintiff's trade secrets were disclosed to defendants.[3]

As an initial matter, the Complaint alleges that Farmers Edge stole plaintiff's trade secrets without ever accessing source code or other under-the-hood technical details. The Complaint describes a process where Farmers Edge employees—violating contractual promises to plaintiff—shared the login credentials for plaintiff's platform with other employees and contractors. Doc. 1 at 12 (Compl. ¶¶ 39–42); *see also id.* at 6 (Compl. ¶¶ 16, 18) (explaining that plaintiff issues "confidential login credentials for each license to a named single-user" and "strictly prohibits sharing of login credentials"). Plaintiff alleges that Farmers Edge used its access to plaintiff's platform to steal its trade secrets. As plaintiff tells it, Farmers Edge "took and used numerous screen shots" to facilitate its copying of plaintiff's platform. *Id.* at 12 (Compl. ¶ 38). And Farmers Edge had access to plaintiff's "methodology in setting up and deploying real-time stations and sensors, logistics, meta data and meta data collection and other critical operations." *Id.* Farmers Edge never hacked plaintiff or otherwise accessed the code that made plaintiff's platform operate. *See id.* at 14 (Compl. ¶ 46) (alleging Farmers Edge "did not know exactly what made [plaintiff's] products run"). And still, it stole plaintiff's trade secrets and directly incorporated them into its competing platform—FarmCommand—and eventually InsurTech. *E.g., id.* at 10, 11–14 (Compl. ¶¶ 31, 34, 36–47). As alleged, plaintiff's trade secrets were thus present on the face of its platform.

---

[3]    The court doesn't agree exactly with plaintiff's basis for distinguishing *Silvaco*. *See* Doc. 29 at 15–16. But plaintiff has argued that *Silvaco* is distinguishable and that it adequately has alleged defendants' use of its trade secrets. The court's resolution of this debate thus "is not limited to the particular legal theories advanced by the parties[.]" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *United States v. Cortez-Nieto*, 43 F.4th 1034, 1052 (10th Cir. 2022) ("The [party-presentation] principle does not say that once an issue has been raised and responded to, a court must render its decision in accordance with the position of one of the parties. Courts have always had authority to resolve raised issues as fairness requires.").

The Complaint's characterization of plaintiff's trade secrets corroborates this point. The Complaint alleges facts that, if true, would support a plausible inference that plaintiff's trade secrets readily are viewable from the software itself. For instance, plaintiff alleges, its "software interfaces" and "graphic user and user interface design" are trade secrets. Doc. 1 at 5 (Compl. ¶ 15(b)). Because plaintiff alleges that Farmers Edge directly stole its trade secrets and rolled them into its competing platforms, *id.* at 10, 11–14 (Compl. ¶¶ 31, 34, 36–47), the Complaint supports a plausible inference that Farmers Edge's competing platform also showed these trade secrets on the face of its platform. That is, it's plausible to infer that a user of Farmers Edge's platform would encounter plaintiff's trade secrets—including, at the very least, its graphic user interface. *See id.* at 12 (Compl. ¶ 39) (alleging Farmers Edge employee stated in email that he wanted to see plaintiff's platform to "build Farms Edge's interface accordingly"); *id.* at 5 (Compl. ¶ 15(b)) (alleging that plaintiff's trade secrets include interface design).

Viewing the Complaint's allegations in the light most favorable to plaintiff and drawing all reasonably inferences from those facts—as the court must—the court thus infers that plaintiff's trade secrets readily were viewable from the face of its platform and from the face of InsurTech. InsurTech didn't just contain trade secrets internally in its source code; it outwardly disclosed "material aspect[s]" of plaintiff's trade secrets. *Dur-A-Flex*, 321 A.3d at 334. This inference means this case isn't one like *Silvaco*, where the defendant never encountered the trade secrets—technical details buried deep under the hood of a software program. Farmers Edge's software platform plausibly disclosed plaintiff's trade secrets to defendants when they accessed, used, and viewed it. Plaintiff thus has alleged adequately that defendants acquired and used its trade secrets. The court declines to dismiss the Complaint on this basis.

### B.      Knowledge

Defendants next argue that plaintiff has failed to allege that defendants knew or should have known that Farmers Edge misappropriated plaintiff's trade secret.  Doc. 19 at 13–15.[4]

The Complaint alleges three bases for defendants' knowledge—defendants' due-diligence requirements, defendants' investment relationship with Farmers Edge, and ongoing litigation involving plaintiff and Farmers Edge.  Doc. 1 at 25 (Compl. ¶ 83).  The first two arguments founder.  But the third—ongoing litigation—connects.  And it convinces the court that defendants plausibly had reason to know that they were using software built on stolen trade secrets.[5]

#### 1.   Due-Diligence Requirements

Plaintiff first argues that defendants either knew or had reason to know that Farmers Edge misappropriated plaintiff's trade secrets because of defendants' due-diligence duties.  Doc. 29 at 10–11, 16.  As the Complaint tells it, there "is essentially no plausible way that" defendants could "fulfill their diligence requirements . . . without gaining intimidate knowledge of [Farmers Edge's] misappropriation of [plaintiff's] trade secrets."  Doc. 1 at 19 (Compl. ¶ 62).  This assertion is a legal conclusion, not entitled to a presumption of truth.  And plaintiff's factual

---

[4]      The governing statutes use the phrase "reason to know" instead of "should have known."  E.g., Kan. Stat. Ann. § 60-3320(2)(i); 18 U.S.C. § 1839(5)(A).  In some contexts, these phrases have distinct meanings.  *See* Restatement (Second) of Torts § 12 (A.L.I. 1965).  But this is a point no party ever addresses.  And all parties cite law suggesting that the standard is "should have known."  Doc. 19 at 10 (citing *API Ams.*, 380 F. Supp. 3d at 1148); Doc. 29 at 14 (citing *API Ams.*, 380 F. Supp. 3d at 1147–48).  To remain faithful to the statute, the court uses the phrase "reason to know" here.  But for present purposes, this distinction doesn't matter because the court would reach the same result under either construction.

[5]      Plaintiff also alleges—albeit in conclusory fashion—defendants "knew that InsurTech was acquired by improper means by" Farmers Edge.  Doc. 1 at 24 (Compl. ¶ 80).  The court needn't consider such conclusory allegations, *see Iqbal*, 556 U.S. at 663 (instructing that courts needn't accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements"), and it doesn't do so here.

allegations don't support a plausible inference that defendants had any duty to investigate the research-and-development process for Farmers Edge's software.

Consider where plaintiff begins. It alleges that defendants are Approved Insurance Providers, which must "undertake thorough and comprehensive due diligence on all affiliates." *Id.* at 18–20 (Compl. ¶¶ 61–63). Plaintiff asserts that the USDA requires insurance providers like defendants to report on subjects like the "E-Business Plan," "the IT architecture and operating environment," and "records management/security and compliance with the Federal Information Security Management Act[.]" *Id.* at 19 (Compl. ¶ 63). And plaintiff similarly asserts that the USDA requires Approved Insurance Providers "to undertake thorough and comprehensive due diligence on all affiliates." *Id.* And Farmers Edge qualifies under the pertinent definition of "affiliate." *Id.*

Plaintiff next alleges that defendants are subject to regulation by states and by the National Association of Insurance Commissioners. *Id.* at 20–21 (Compl. ¶¶ 65–68). According to plaintiff, "the Delaware State Department of Insurance led a multi-state examination of all subsidiaries" of defendants' parent company. *Id.* at 20 (Compl. ¶ 65). This examination included assessing defendants' financial condition, corporate governance, current and prospective risks, system controls and procedures, and partnerships and vendors. *Id.* So, plaintiff concludes, had defendants "taken these audit procedures and regulations seriously, they doubtless would have discovered that [Farmers Edge] had blatantly stolen [plaintiff's] Trade Secrets[.]" *Id.* at 20–21 (Compl. ¶ 65). However expressed, plaintiff's allegation boils down to the bare assertion that, to comply with regulations, defendants must have uncovered Farmers Edge's trade-secret misappropriation. *See id.*; *id.* at 24–25 (Compl. ¶¶ 80–81).

These allegations won't do. Plaintiff hasn't articulated any specific regulation or procedure that can support the inference that defendants necessarily investigated Farmers Edge's research-and-development process for developing InsurTech. Plaintiff plausibly has alleged that regulatory policies obligated defendants to ensure that they used vendors and products that adhered to stringent data-security protocols. *See id.* at 19 (Compl. ¶ 63) (alleging "data that insurance companies . . . collect is private and highly sensitive" and that defendants' relationship with Farmers Edge "involve[d] farmer data which is regulated by the USDA-RMA"). But plaintiff never has alleged or explained why defendants should have investigated the origins of Farmers Edge's software. And without that allegation, plaintiff's theory withers.

Other courts have rejected equally amorphous duty-to-investigate arguments like the one plaintiff makes here. For example, in one case, plaintiff alleged that defendants "had a duty to investigate the origins" of inventions under their employer's policies and that "as a result," the defendants "knew, reasonably should have known, or [were] willfully blind" to the inventions' origins. *Agensys, Inc. v. Regents of the Univ. of Cal.*, No. CV 24-3961-JFW(PDx), 2024 WL 5679166, at *7 (C.D. Cal. Oct. 22, 2024). The court rejected such vague allegations and inferences, terming them as "nothing more than conclusory[.]" *Id.* Plaintiff failed to explain how defendants knew or had reason to know the inventions were built on misappropriated trade secrets, and a bare assertion that some policy meant they should have investigated and discovered wasn't sufficient. *See id.*; *see also Canoo Techs., Inc. v. Harbinger Motors, Inc.*, No. 22-cv-09309-FLA (JCx), 2024 WL 4329059, at *4 (C.D. Cal. Feb. 1, 2024) (characterizing allegation that defendants acquired trade secret "with full knowledge (via due diligence)" as "largely conclusory"). The same logic applies here.

Put simply, plaintiff hasn't alleged facts that permit the court to infer that defendants either discovered or should have discovered that they were using a service that Farmers Edge had constructed from stolen trade secrets. Plaintiff hasn't cited any case law to support its position. And the court finds the relationship between Farmers Edge's misappropriation and defendants' due-diligence obligations too tenuous to support a plausible inference that defendants knew or had reason to know that they were using a service built on stolen ideas.

### 2. Investment Relationship

Plaintiff next theorizes that defendants and their parent company, Fairfax, had invested in Farmers Edge and that this investment relationship meant that defendants knew—or had reason to know—about Farmers Edge's misappropriation. Doc. 1 at 21–25 (Compl. ¶¶ 68–83). As alleged, Fairfax "provided substantial financial backing" for Farmers Edge and gradually increased control over Farmers Edge until it "assumed complete control" of the company in March 2021. *Id.* at 21–22 (Compl. ¶¶ 69–72). Defendant Odyssey provided Farmers Edge "with a series of loans and convertible debentures totaling $85.9 million." *Id.* at 22 (Compl. ¶ 72).[6]

Plaintiff concludes that because of defendant Odyssey's "large investment" in Farmers Edge, it "was at the very least willfully blind to the theft" of plaintiff's trade secrets. *Id.* at 23 (Compl. ¶ 76). This *ipse dixit* pleading just won't do. It's well-established that a corporation isn't liable for the misconduct of companies it owns. *See United States v. Bestfoods*, 524 U.S.

---

[6]    The portion of the Complaint making these investment assertions also advances additional due-diligence arguments. For instance, plaintiff alleges Fairfax and defendants performed due diligence on the vendors and products that they employed. Doc. 1 at 23 (Compl. ¶¶ 74–75). And this due diligence included oversight in areas like "cyber security, IT infrastructure and information security management systems, and data and disaster recovery, and data protection." *Id.* (Compl. ¶ 75). The court already has explained why these due-diligence arguments are unavailing. Abstract, generic due-diligence obligations applying to data management and security don't furnish a basis to infer a duty to investigate the origins of Farmers Edge's technology. Plaintiff hasn't cited a single regulation or internal procedure obligating defendants to interrogate Farmers Edge's research-and-development process.

51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.") (quotation cleaned up); *cf. Masimo Corp. v. Wireless*, No. 19-cv-01100-BAS-NLS, 2020 WL 7260660, at *10 (S.D. Cal. Dec. 10, 2020) (explaining—in patent context—that "the fact of a parent/subsidiary relationship is not enough, on its own, to establish that either entity had the requisite knowledge for contributory infringement"). Plaintiff hasn't explained why defendants should have ferreted out Farmers Edge's misconduct because they were investors in it. In the securities-regulation context, courts routinely hold that shareholders have no duty to investigate misconduct by the corporation they own. *See, e.g.*, *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 57 & n.3 (E.D.N.Y. 2011) (suggesting that sophisticated investors might have a duty to investigate but duty only requires investors to uncover publicly available information); *see also Borden v. Sinskey*, 530 F.2d 478, 48 n.10 (3d Cir. 1976) ("Shareholders have no duty to search a corporation's records for evidence of misconduct on the part of corporate officers and directors. Rather, they are entitled to assume that those standing in a fiduciary relationship to them will be faithful to their charge."). So, defendants' investments in Farmers Edge also don't suggest that they knew or had reason to know Farmers Edge used misappropriated trade secrets to develop InsurTech.

### 3. Litigation

Finally, plaintiff highlights ongoing litigation involving Farmers Edge and its U.S. subsidiary. Doc. 29 at 9–10, 16–17.

As an initial matter, defendants argue that the Complaint doesn't allege that these other lawsuits furnished the requisite notice for defendants to incur trade-secrets liability. Doc. 32 at 5. But the Complaint does reference this theory. *See* Doc. 1 at 25 (Compl. ¶ 83) (listing

14

"ongoing multiple intellectual property-related litigations involving" Farmers Edge as a basis for defendants' alleged knowledge).

As alleged, the Canada litigation wasn't sufficient to give defendants notice that the Farmers Edge product they were using was built on stolen trade secrets. Made simply on that level, plaintiff's argument would require inferential leaps that the Complaint just doesn't support. Plaintiff contends that discovery in the Canada lawsuit yielded "damning evidence" about Farmers Edge's misappropriation, which defendants should have unearthed. Doc. 29 at 16. But plaintiff hasn't alleged how discovery produced in the Canada litigation could have landed on defendants' radars. Discovery ordinarily doesn't become part of the public record. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 34 (1984) (explaining that "discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes" and that "pretrial depositions and interrogatories are not public components of a civil trial"); *U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1185 (10th Cir. 2008) ("Information revealed to another party during discovery is likewise a public disclosure only when those materials are filed with the court."). And just because defendants invested in Farmers Edge doesn't mean they received access to discovery Farmers Edge provided in litigation that didn't involve defendants.

Even if it were plausible that defendants accessed the discovery in the Canada litigation, it's still not clear how defendants would have received notice that InsurTech was built on misappropriated trade secrets. By plaintiff's own allegations, the information plaintiff gleaned from the Canada litigation—when Farmers Edge "finally produced a trove of documents"—had nothing to do with defendants or InsurTech. *Id.* at 25–26 (Compl. ¶ 84) ("[N]one of the documents produced on June 15, 2021[,] by [Farmers Edge] related in any way to the

misappropriation of [plaintiff's] Trade Secrets as they related to InsurTech or related products marketed by [d]efendants."); *id.* at 15 (Compl. ¶ 50) ("[Plaintiff] did not through reasonable diligence have any reasonably suspicion that the separate product of [d]efendants, InsurTech[,] was based upon its Trade Secrets or that [d]efendants had received any of its Trade Secrets until well after June 15, 2021.").[7]  Instead, plaintiff alleges it didn't "have any reasonable suspicion" that InsurTech was built on trade secrets until "well after June 15, 2021." *Id.*  It's thus not clear from the Complaint when or how plaintiff purportedly learned these details.

Plaintiff asserts that the Canada "litigation would have caused any investor to inquire about basic evidence related to FarmCommand's creation, and any such inquiry would have uncovered the admitted theft of [plaintiff's] trade secrets." Doc. 29 at 9.  But plaintiff hasn't alleged that defendants used FarmCommand.  So even if a prudent investor would have inquired about Farmers Edge based on the lawsuit, plaintiff hasn't explained plausibly why this inquiry would have caused defendants to learn that InsurTech was built on misappropriated trade secrets.

But the court reaches a different result based on the Virginia litigation.[8]  There, plaintiff filed a lawsuit on July 12, 2021.  Complaint, *Precision Weather Sols, Inc. v. Farmers Edge Inc.*,

---

[7]    Plaintiff's response brief confuses the issue somewhat, alleging that the June 2021 discovery trove revealed that Farmers Edge "could not possibly have created FarmCommand *or InsurTech* without misappropriating" plaintiff's trade secrets.  Doc. 29 at 9–10 (emphasis added).  But the Complaint is clear on the point.  According to it, plaintiff didn't connect the dots between InsurTech and misappropriation until "well after" June 15, 2021.  Doc. 1 at 15, 25–26 (Compl. ¶¶ 50, 84).  And in any event, arguments in briefing materials are no substitute for allegations in a Complaint.  *See Issa v. Comp USA*, 354 F.3d 1174, 1179 (10th Cir. 2003) (explaining "plaintiff may not rely on the allegations in his reply brief to supplement his complaint").  Plaintiff's Response can't murky the waters.

[8]    The Complaint doesn't reference the Virginia litigation by that description.  *See generally* Doc. 1.  But both parties reference it in their motion-to-dismiss briefing.  Doc. 19 at 7–8; Doc. 29 at 11–12.  Defendants also attached a copy of the complaint from the Virginia action to their Motion to Dismiss.  Doc. 20-6.  The court thus may take judicial notice of that action.  *See Bruce v. City and County of Denver*, 57 F.4th 738, 741 n.3 (10th Cir. 2023) ("[A] federal court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue.").  This conclusion also means the court may consider the filing of the Virginia lawsuit when ruling this Motion to Dismiss.  *See*

No. 21-cv-00821-LO-IDD, (E.D. Va. July 12, 2021), Doc. 1 at 1.  This lawsuit alleged that Farmers Edge had used plaintiff's trade secrets to build InsurTech.  *Id.* at 22 (Virginia Compl. ¶¶ 52–53).  So, unlike the Canada litigation, the Virginia litigation involved a direct claim by plaintiff that the technology defendants allegedly were using was built on stolen trade secrets.  The court finds that defendants —by way of this Virginia litigation—plausibly had reason to know that they were using a service involving misappropriated trade secrets.

Courts routinely find that "investors [have] reason to track the companies in which they invested."  *Thompson v. 1-800 Contacts, Inc.*, No. 16-CV-1183-TC, 2018 WL 2271024, at *13 (D. Utah May 17, 2018) (compiling cases in the securities-fraud context).  Given that the Complaint alleges defendants invested significant sums in Farmers Edge, Doc. 1 at 22 (Compl. ¶¶ 71–72), the Complaint supports the plausible inference that defendants knew about the Virginia litigation—or had reason to know.  And other courts have held that knowledge of a lawsuit may trigger a duty to inquire.

For instance, in *Metallurgical Industries, Inc. v. Fourtek, Inc.*, 790 F.2d 1195 (5th Cir. 1986), one defendant agreed to build a novel furnace for another defendant, Smith International, Inc.  790 F.2d at 1198.  The defendant who built the novel furnace allegedly had stolen the plaintiff's trade secrets to design it.  *Id.*  Plaintiff adduced evidence that Smith had notice that plaintiff claimed ownership of the furnace design in another lawsuit.  *Id.* at 1204.  Thus, the Fifth Circuit explained, "a reasonable jury could find that Smith should have inquired into the relationship between" plaintiff and the defendant who built the furnace.  *Id.*  And so, "Smith might therefore be held accountable[.]"  *Id.*  So *Metallurgical Industries* says that an entity who learns—through litigation— that another party claims trade-secret ownership over a product the

---

*Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025) (explaining that courts may consider "matters subject to judicial notice" when deciding a motion to dismiss).

entity uses may not turn a blind eye to that assertion without risking liability.  *See Pie Dev.,*
*L.L.C. v. Pie Carrier Holdings, Inc.*, 128 F.4th 657, 665 (5th Cir. 2025) ("Because ongoing
litigation 'put defendant on inquiry and an inquiry pursued with reasonable intelligence and
diligence would disclose the facts,' the defendant could be held liable for misappropriation."
(quotation cleaned up) (quoting *Metallurgical Indus.*, 790 F.2d at 1204)).

Defendants had reason to track lawsuits against Farmers Edge, an entity in which they
invested.  And the Virginia litigation plausibly supplied a reason for defendants to know that
they were using a service built on plaintiff's misappropriated trade secrets.  That lawsuit
commenced on July 12, 2021.  Plaintiff hasn't alleged plausibly that defendants had reason to
know they were using plaintiff's trade secrets before that date.  So, the court grants defendants'
motion in part.  It dismisses claims based on defendants' use of plaintiff's trade secrets before
July 12, 2021.  But it declines to dismiss claims based on defendants' use of plaintiff's trade
secrets occurring on or after July 12, 2021.  So, all in all, the court denies defendants' motion in
part.

The court next addresses defendants' Rule 12(b)(7) arguments.  Defendants argue that
Farmers Edge is an indispensable party and seek dismissal on Rule 12(b)(7) grounds.  The court
begins by reciting the rule's governing legal standard.

## IV.        12(b)(7) Legal Standard

Rule 12(b)(7) of the Federal Rules of Civil Procedure permits a district court to dismiss a
case if plaintiff has failed to join a necessary and indispensable party, as Rule 19 requires.  As
the proponent of a Rule 12(b)(7) motion, defendant bears "the burden of producing evidence
showing the nature of the interest possessed by an absent party and that the protection of that
interest will be impaired by the absence."  *Citizen Band Potawatomi Indian Tribe of Okla. v.*
*Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).  Defendants can meet this burden with "'affidavits

of persons having knowledge of these interests as well as other relevant extra-pleading evidence.'" *Id.* (quoting *Martin v. Loc. 147, Int'l Bhd. of Painters*, 775 F. Supp. 235, 236 (N.D. Ill. 1991)). When deciding whether to grant a motion to dismiss under Rule 12(b)(7), federal district courts exercise their discretion. *Id.* A three-step test guides the analysis.

*First*, the court must determine "whether the party is necessary to the suit and must therefore be joined if joinder is feasible." *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996). A party is "necessary" in this sense if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

*Second*, if the absent person is deemed necessary at step one, the court then considers whether joinder is feasible. This factor asks whether the absent person is subject to service of process and whether joinder will deprive the court of subject matter jurisdiction. *Id.*

*Last*, and if the absent person is necessary but joinder is not feasible, the court must decide whether that person is indispensable. *Rishell*, 94 F.3d at 1411. To "conclude that a party is indispensable, the Court must find 'in equity and good conscience' that the action should not proceed in the party's absence." *Kan. City Royalty Co., L.L.C. v. Thoroughbred Assocs., L.L.C.*, 215 F.R.D. 628, 630 (D. Kan. 2003) (quoting Fed. R. Civ. P. 19(b)). When deciding whether to proceed without a necessary party, a federal court weighs the following factors:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

      (A) protective provisions in the judgment;

      (B) shaping the relief; or

      (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). "Because Rule 19(b) does not state the weight to be given each factor, the district court in its discretion must determine the importance of each in the context of the particular case." *Thunder Basin Coal Co. v. Sw. Pub. Serv. Co.*, 104 F.3d 1205, 1211 (10th Cir. 1997) (citing *Glenny v. Am. Metal Climax, Inc.*, 494 F.2d 651, 653 (10th Cir. 1974)).

## V.      Rule 12(b)(7) Analysis

Defendants haven't shouldered their burden to show that Farmers Edge qualifies as either a necessary or indispensable party.

Farmers Edge isn't a necessary party. Our Circuit has explained that "the prejudice to the relevant party's interest may be minimized if the absent party is adequately represented in the suit." *Rishell*, 94 F.3d at 1411 (quotation cleaned up). And here, defendants have an interest "that is virtually identical to" Farmers Edge's interest—averting trade-secret liability based on the development and deployment of InsurTech. *Id.* at 1412. The crux of defendants' argument reasons that enjoining defendants from using InsurTech would have the practical effect of enjoining Farmers Edge from servicing defendants. Doc. 19 at 17. True, plaintiff has requested a permanent injunction restraining defendants—"and corporations acting in concert with them"—from misappropriating its trade secrets. Doc. 1 at 34 (Compl. Prayer for Relief ¶ 2). So,

20

enjoining defendants from using InsurTech could "as a practical matter impair or impede [Farmers Edge's] ability" to offer its software to defendant.  Fed. R. Civ. P. 19(a)(1)(B)(i).  But the court must "look at the practical probabilities more than the theoretical possibilities."  *Air-Exec, Inc. v. Two Jacks, Inc.*, 584 F.2d 942, 945 (10th Cir. 1978) (considering whether the action lacked indispensable parties under Rule 19).  Doing so, any prejudicial impact on Farmers Edge is minimal.  In practice, the worst effect that Farmers Edge likely would face is losing a single customer.  That kind of minor prejudice doesn't qualify for Rule 19 relief.

Plus, defendants haven't shown, plausibly, that Farmers Edge could incur multiple contradictory obligations or that the court could not afford complete relief among the parties. "Although [Farmers Edge's] actions are important to the facts of this case, that does not make [it] a necessary party within the meaning of Rule 19[.]" *DASH Regul. Techs., LLC v. Axiom Software Lab'ys Inc.*, No. 21-cv-8751 (JGK), 2023 WL 2586104, at *5 (S.D.N.Y. Mar. 21, 2023). So, Farmers Edge isn't a necessary party under any provision of Rule 19. Also, even if Farmers Edge were a necessary party, the court still would deny defendants' motion.[9]

That's so because Farmers Edge isn't an indispensable party.  Recall that four factors inform the inquiry whether a party is indispensable:  prejudice against an absent or present party; the extent that a judgment could minimize or avert prejudice; whether a judgment in the party's absence is adequate, and whether the plaintiff has an adequate alternative remedy if the court dismisses the case.  Fed. R. Civ. P. 19(b).

---

[9]    Neither party argues that joining Farmers Edge is feasible.  *See* Doc. 19 at 17–18 (arguing that joining Farmers Edge is infeasible because the statute of limitations has expired for any trade-secrets claim that plaintiff could assert); *see generally* Doc. 29 (failing to respond to this argument).  So, the court also assumes that joinder isn't feasible.

The first factor weighs against dismissal. Defendants and Farmers Edge would share an interest in this litigation—disproving that InsurTech incorporated plaintiff's trade secrets. In similar shared-interest suits, the Tenth Circuit has explained, "prejudice to the absent parties is not a concern[.]" *Rishell*, 94 F.3d at 1412. Defendants argue that they'd suffer prejudice because, as they explain it, without "Farmers Edge, [plaintiff's] allegations concerning Farmers Edge would simply be accepted as fact without involving the party whose actions form the basis of the entire dispute." Doc. 19 at 18. The court isn't persuaded. Defendants haven't explained why they couldn't defend *their* conduct absent Farmers Edge's presence.

The second factor also weighs against dismissal. Where prejudice is minimal, the Circuit has suggested that courts "need not be concerned with the second factor[.]" *Rishell*, 94 F.3d at 1412. Plus, the court could minimize any prejudice effectively. For instance, the court could limit any Judgment to money damages, which would neutralize any prejudice that Farmers Edge might suffer. As defendants recognize, the court also could "tailor any relief to only apply to [d]efendants[.]" Doc. 19 at 19. Defendants still insist that any adverse decision "must necessarily decide that Farmers Edge did in fact violate the DTSA and KUTSA[.]" *Id.* But such a determination wouldn't prejudice Farmers Edge because it would have no preclusive effect against it as a nonparty. Courts have rejected Rule 12(b)(7) arguments in similar circumstances. *See, e.g.*, *Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871 (7th Cir. 2004) ("Philips will have to prove that E & E broke its contract with Philips by revealing Philip's trade secrets without authorization. But that is true in any case of tortious interference with contract. Just as in the closely related case of joint tortfeasors, there is no rule that you cannot sue the interferer without also suing the party to your contract whom the defendant inveigled into breaking the contract."); *Clorox Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp. 2d 954, 964 (E.D.

Wis. 2009) (denying 12(b)(7) motion in trade-secrets case because the third party "may be an essential or indispensable witness and may also be a joint tortfeasor . . . , but this alone" did not make him an indispensable party). So, the second factor weighs against dismissal.

"The third factor requires consideration of whether an adequate remedy can be awarded without the absent party." *Rishell*, 94 F.3d at 1412. It, too, suggests that dismissal is inappropriate. The court could award any legal remedy without affecting Farmers Edge. And, as the court already has discussed, any injunctive relief would have minimal affect on Farmers Edge. So, the court could craft an adequate remedy without Farmers Edge joining.

Finally, the fourth factor is neutral. This factor inquires "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). Defendants argue that plaintiff's litigation in Canada against Farmers Edge is a sufficient alternative remedy. Doc. 19 at 19. Plaintiff never contests defendants' characterization. *See generally* Doc. 29. And the court agrees. A lawsuit against Farmers Edge furnishes some remedy for plaintiff. But the lawsuit in Canada doesn't include defendants. So, if Farmers Edge isn't solvent, *see* Doc. 1 at 22–23 (Compl. ¶ 73) (alleging that Farmers Edge's market cap has plummeted recently), or if plaintiff can muster proof that defendants have incurred liability beyond that of Farmer's Edge, the lawsuit in Canada might prove inadequate. The court thus considers this factor neutral.

With three factors weighing against dismissal and one weighing in as neutral, the court concludes that Farmers Edge isn't an indispensable party. In "equity and good conscience," the court concludes this action "should proceed among the existing parties[.]" Fed. R. Civ. P. 19(b). The court thus denies defendants' request to dismiss the Complaint under Rule 12(b)(7).

## VI.        Motion to Take Judicial Notice

Defendants have also filed a Motion to Take Judicial Notice (Doc. 27).  This motion asks the court to take judicial notice of various documents filed in lawsuits in Virginia and Canada. *See* Doc. 20-1; Doc. 20-2; Doc. 20-3; Doc. 20-4; Doc. 20-6.  The court grants this motion.

A federal court may take judicial notice of "a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The court must take judicial notice if a party requests it and supplies the court with the necessary information.  Fed. R. Evid. 201(c)(2).  When ruling a motion to dismiss, a court may consider facts subject to judicial notice without converting the motion to dismiss into a motion for summary judgment.  *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Filings from other courts satisfy the judicial-notice standard.  *See Bruce*, 57 F.4th at 741 n.3 ("[A] federal court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue.").  So, the court judicially notices the documents defendants have submitted.  *See* Doc. 20-1; Doc. 20-2; Doc. 20-3; Doc. 20-4; Doc. 20-6. Ultimately, this ruling proves relatively insignificant.  That's so because the court may not consider the truth of any allegation contained in these documents.  *See Bruce*, 57 F.4th at 741 n.3 ("The documents may only be considered to show their contents, not to prove the truth of matters asserted" by those contents. (quotation cleaned up)); *see also* Doc. 28 at 4–5 (clarifying that defendants don't ask for judicial notice "as evidence that any allegations in the pleadings or determinations by the Canada court are true—just the notice that allegations, claims, and conclusions were made").  So, the court grants defendants' Motion to Take Judicial Notice (Doc.

27).  And the court considers these court filings in ruling defendants' Motion to Dismiss.  But they don't move the needle on the court's rulings.[10]

And the court declines to consider other filings that defendants submitted alongside their Motion to Dismiss (Doc. 18).  For instance, defendants filed a declaration from Dan Gasser, president of one of defendant Hudson's subsidiaries.  Doc. 21 (Gasser Decl.).  Defendants argue that this declaration "provides critical context as to why [plaintiff's] tenuous, conclusory allegations are incorrect[.]"  Doc. 32 at 3 n.2.  "Critical context" isn't an exception to the general rule that a court may consider "only the allegations within the four corners of the complaint and cannot consider other pleadings or external allegations."  *Brown*, 124 F.4th at 1263 (quotation cleaned up).  The court thus declines to consider this declaration.

## VII.    Conclusion

The court thus grants in part and denies in part defendants' Motion to Dismiss (Doc. 18).  Plaintiff hasn't alleged plausibly that defendants knew or had reason to know that they were using a software platform that included stolen trade secrets until they filed a lawsuit in Virginia on July 12, 2021.  The court thus dismisses any trade-secret claim arising from conduct occurring before that date.  In all other respects, the court denies defendants' Motion to Dismiss (Doc. 18).

---

[10]    Defendants cite these court filings as support for the following assertions in their statement of facts:

- Farmers Edge sued plaintiff in Canada, alleging breach-of-contract claims.  Doc. 19 at 6–7.
- Plaintiff counterclaimed for infringement of intellectual property rights in the Canada lawsuit.  *Id.* at 7.
- Plaintiff alleged that it learned of Farmers Edge's infringement in June 2019.  *Id.*
- Plaintiff sought—and the Canadian court denied—an injunction to prevent Farmers Edge from selling its software.  *Id.*
- Plaintiff sued Farmers Edge's U.S. subsidiary in the Eastern District of Virginia on July 12, 2021.  *Id.*

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Hudson Insurance Company and Odyssey Group Holdings, Inc.'s Motion to Dismiss (Doc. 18) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendants Hudson Insurance Company and Odyssey Group Holdings, Inc.'s Motion to Take Judicial Notice (Doc. 27) is granted.

**IT IS SO ORDERED.**

**Dated this 18th day of September 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**