## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

PRECISION WEATHER
SOLUTIONS, INC.

       *Plaintiff*,

    *v.*

HUDSON INSURANCE COMPANY;
ODYSSEY GROUP HOLDINGS,
INC.; AND JOHN DOES 1–10,

      *Defendants*.

No. 2:24-cv-02258-DDC-GEB

### DEFENDANTS' MOTION FOR RECONSIDERATION

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   DEFENDANTS RESPECTFULLY REQUEST RECONSIDERATION OF THE COURT'S FINDING THAT THE FILING OF VIRGINIA LITIGATION, TO WHICH THEY WERE NOT PARTIES, PLAUSIBLY IMPLIES DEFENDANTS KNOWINGLY MISAPPROPRIATED. ................................................................................................ 2

    A.    Legal Standard ..................................................................................... 3

    B.    The Court Committed Clear Error in its Application of the Law to Plaintiff's Allegations of Defendants' Knowledge of Farmers Edge's Alleged Misappropriation ................................................................................. 4

        i.    The Court Erred in Its Interpretation of Plaintiff's Allegations .................. 4

        ii.   The Court Erred in its Application of the Law ......................................... 5

    C.    Affirming the Court's Order Would Work Manifest Injustice .............................. 9

III.  CONCLUSION................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bagby Elevator Co. v. Schindler Elevator Corp.*,
  No. 3:08-CV-0005-P, 2009 WL 10703109 (N.D. Tex. Jan. 23, 2009)......................................4

*Brumark Corp. v. Samson Res. Corp.*,
  57 F.3d 941 (10th Cir. 1995) ...............................................................................................3

*Caprin v. Simon Transp. Servs., Inc.*,
  99 F. App'x 150 (10th Cir. 2004)..........................................................................................7

*Farmers Edge Inc. v. Precision Weather Sols. Inc.*,
  No. CI 15-01-99336 (Can. Man. Ct. K.B. Sept. 11, 2025) .......................................................10

*Metallurgical Indus. Inc. v. Fourtek, Inc.*,
  790 F.2d 1195 (5th Cir. 1986) ..........................................................................................4, 8

*Pie Dev., L.L.C. v. Pie Carrier Holdings, Inc.*,
  128 F.4th 657 (5th Cir. 2025) ...............................................................................................9

*Precision Weather Sols., Inc. v. Farmers Edge Inc.*,
  No. 21-cv-00821-LO-IDD (E.D. Va. July 12, 2021)...................................................... *passim*

*Thompson v. 1-800 Contacts, Inc.*,
  No. 16-CV-1183-TC, 2018 WL 2271024 (D. Utah May 17, 2018) ....................................6, 7

*Walker v. Corizon Health, Inc.*,
  2022 WL 1521930 (D. Kan. May 13, 2022).............................................................................3

**Other Authorities**

Local Rule 7.2 ............................................................................................................................1

Local Rule 7.3 ............................................................................................................................3

Rule 12(b)(6).............................................................................................................................9

## I.    INTRODUCTION

Defendants Hudson Insurance Company ("Hudson") and Odyssey Group Holdings, Inc. ("Odyssey") (together with Hudson, the "Defendants") submit this motion for reconsideration of the Court's September 18, 2025 Memorandum and Order (Dkt. 38) (the "Order"), granting-in-part and denying-in-part Defendants' Motion to Dismiss (Dkt. 19).[1] Defendants respectfully submit that the Court's ruling on the sufficiency of Plaintiff's pleading of the knowledge requirement for trade secret misappropriation misapprehends controlling law and, if left undisturbed, would work manifest injustice.

Specifically, the Court's Order errs on whether knowledge of third-party misappropriation has been sufficiently pled where Defendants' alleged knowledge is inferred based on Plaintiff's filing of the Virginia litigation, even though neither Defendant was a party to the Virginia litigation and Plaintiff does not allege Defendants knew of the litigation.[2] Specifically, Plaintiff's claims can only survive if (1) the Virginia litigation was reasonably accessible such that Defendants should have been aware of it; (2) Defendants' awareness of the Virginia litigation would have put each of them on inquiry notice of Plaintiff's allegations; and (3) this notice should have led Defendants to know they were using misappropriated trade secrets. Here, the Court incorrectly found that all three of these legal requirements were satisfied as to both Odyssey and Hudson.  However, there is no plausible inference that can be made that each of the Defendants would have independently become aware of the Virginia litigation or that, even if they had become aware of the Virginia litigation, it would have put them on notice that they were using misappropriated trade secrets.

Should the Court's Order remain undisturbed, the resulting effect would be untenable.

---

[1] Defendants' respectfully request the Court set oral argument for this motion pursuant to Local Rule 7.2.

[2] *Precision Weather Sols., Inc. v. Farmers Edge Inc.*, No. 21-cv-00821-LO-IDD (E.D. Va. July 12, 2021) (the "Virginia litigation").

Indeed, it would stand for the proposition that any investor or company who invests in a third party or uses a third party's product, service, or platform, is required to constantly monitor the countless federal and state court dockets across the country for allegations of trade secret misappropriation. And then, if allegations are filed, it would require those investors (or companies), regardless of the subjective strength of the allegations, to conduct a time-intensive and expensive analysis of the claims or disrupt its business operations by severing ties with the third party altogether, lest they be subjected to expensive and intrusive litigation—all before any such allegations were even proven in court. To prevent manifest injustice, Defendants respectfully request the Court to reconsider its Order and dismiss Plaintiff's complaint in its entirety.

## II.    DEFENDANTS RESPECTFULLY REQUEST RECONSIDERATION OF THE COURT'S FINDING THAT THE FILING OF VIRGINIA LITIGATION, TO WHICH THEY WERE NOT PARTIES, PLAUSIBLY IMPLIES DEFENDANTS KNOWINGLY MISAPPROPRIATED.

In assessing the sufficiency of Plaintiff's allegations concerning the knowledge element of trade secret misappropriation claims, the Court rightly found that Plaintiff's allegations concerning due-diligence requirements and an investment relationship were insufficient. (Dkt. 38 at 10–14.) However, the Court next reviewed Plaintiff's allegations against Farmers Edge in the Virginia litigation, finding that "[t]he lawsuit alleged that Farmers Edge had used plaintiff's trade secrets to build InsurTech," which is "the technology defendants allegedly were using" in this case. (*Id.* at 17.) The Court found that "Defendants had reason to track lawsuits against Farmers Edge, an entity in which they invested" and, because of allegations in the Virginia litigation, Defendants "plausibly had reason to know that they were using a service involving misappropriated trade secrets." (*Id.* at 17–18.) From these conclusions, the Court found Plaintiff sufficiently pled the knowledge requirement for trade secret misappropriation.[3] (*Id.* at 17–18.) Defendants respectfully

---

[3] The Court's order also limited Plaintiff's trade secret claims in this case to those from July 12,

submit that the Court clearly erred in its application of the law and its interpretation of Plaintiff's allegations to find Plaintiff's Complaint adequately pled the knowledge requirement.

Should the Court's Order stand, the resulting legal standard would mean that any investor who uses a third-party product has a duty to actively monitor all dockets for allegations of misappropriation. And if such allegations are found, the investor must, in order to mitigate risk, either conduct a thorough analysis of unproven allegations, pause any work with the third party until the allegations are adjudicated, or sever ties with the third party altogether, resulting in significant disruption to the investor's operations and customers. This result is untenable and would work manifest injustice if left in place.

### A.    Legal Standard

Pursuant to D. Kan. Local Rule 7.3, a party may seek reconsideration of a court order within 14 days after the order is served. The motion must be based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." Local Rule 7.3. "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Walker v. Corizon Health, Inc.*, 2022 WL 1521930, at *2 (D. Kan. May 13, 2022) (Crabtree, J.) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). Whether to grant or deny reconsideration lies within the court's sound discretion. *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995).

To state a plausible claim for misappropriation of trade secrets, a complaint must plead that a defendant knew or had reason to know of the misappropriation. (Dkt. 38, at 2, 4.) A defendant only has reason to know of misappropriation when they learn of some fact putting them on notice.

2021—the date Plaintiff filed the Virginia Litigation—onward. (Dkt. 38 at 17–18.) Defendants do not move to reconsider this aspect of the Court's ruling.

3

*Metallurgical Indus. Inc. v. Fourtek, Inc.,* 790 F.2d 1195, 1204 (5th Cir. 1986). This notice can be accomplished through "either actual notice, constructive notice if a reasonable person would have inferred the facts, or inquiry notice if a reasonable person would have inquired further and such inquiry would have disclosed the presence of facts that the information was held in secret." *Bagby Elevator Co. v. Schindler Elevator Corp.,* No. 3:08-CV-0005-P, 2009 WL 10703109, at *11 (N.D. Tex. Jan. 23, 2009), *aff'd*, 609 F.3d 768 (5th Cir. 2010).

**B.     The Court Committed Clear Error in its Application of the Law to Plaintiff's Allegations of Defendants' Knowledge of Farmers Edge's Alleged Misappropriation**

In analyzing Plaintiff's allegations, the Court credited Plaintiff's reference to "ongoing multiple intellectual property-related litigations involving" Farmers Edge as support for Plaintiff's sufficient articulation of the knowledge requirement. (Dkt. 38 at 14–15 (citing Dkt. 1 at ¶ 83).) Importantly, Plaintiff's complaint does not allege that either Odyssey or Hudson actually knew of the Virginia litigation. At most, the Complaint alleges that Defendants necessarily would have had to know about the Virginia litigation, and, in turn, the misappropriation "[b]ased upon the nature of the partnership" between Hudson and Farmers Edge. (Dkt. 1 at ¶ 83.) However, the law does not support that Defendants would each have independent reason to know of the Virginia litigation. Accordingly, absent the Virginia litigation putting them on notice, Defendants cannot each be held liable for allegedly using products that contained trade secrets. *Bagby Elevator Co.,* No. 3:08-CV-0005-P, 2009 WL 10703109, at *11.

**i.     The Court Erred in Its Interpretation of Plaintiff's Allegations**

First, Defendants respectfully disagree with the Court's interpretation of Defendants' knowledge and submit that the Court's statements are overbroad and not supported by the facts as pled in Plaintiff's Complaint. In finding the Virginia litigation met the pleading standard for the knowledge requirement, the Court stated: "The court finds that defendants—by way of this

4

Virginia litigation—plausibly had reason to know that they were using a service involving misappropriated trade secrets" and "defendants plausibly had reason to know that they were using software built on stolen trade secrets." (Dkt. 38 at 10, 17.) However, as discussed herein, the Complaint does not allege that Defendants had actual knowledge of the Virginia litigation. (Dkt. 1 at ¶¶ 62-85.)

Even assuming Defendants had reason to know of the litigation, it does not equate that Defendants plausibly had knowledge that Farmers Edge software was definitively "built on stolen trade secrets," as Plaintiff's claims had yet to reach final adjudication by a judge or jury. At most, Defendants had reason to know of *allegations* against Farmers Edge in the Virginia litigation— allegations that were successfully dismissed less than two months after Plaintiff filed the lawsuit. Plaintiff's Complaint also acknowledges that Farmers Edge disputed Plaintiff's allegations of misappropriation, signing a sworn affidavit to that effect in the co-pending Canadian litigation, and the Canadian court found that Plaintiff "had not demonstrated the requisite *prima facie* merits of its case" in 2021. (*Id.* at ¶¶ 84–85.) Further, Plaintiff's Complaint does not allege any relationship between Defendants and Farmers Edge entitling Defendants to access any non-public information as to Farmers Edge's technology, nor are there any allegations that Defendants were able to appreciate or compare any alleged similarities between Plaintiff's technology and Farmers Edge's technology. Finally, as discussed *infra*, the Canadian court recently struck Plaintiff's misappropriation claims against Farmers Edge in their entirety. Given the facts pled—and not pled—by Plaintiff in its Complaint, even if Defendants had reason to know about the Virginia litigation, there is no plausible inference that Defendants "had reason to know that they were using software built on stolen trade secrets." (Dkt. 38 at 10, 17.)

### ii.   The Court Erred in its Application of the Law

Next, Defendants respectfully submit the Court erred in applying the law to the allegations

pled in Plaintiff's Complaint. First, the Court relies on *Thompson v. 1-800 Contacts, Inc.*, No. 16-CV-1183-TC, 2018 WL 2271024 (D. Utah May 17, 2018), which analyzes securities fraud cases to support its conclusion that investors "have reason to track the companies in which they invest" and therefore should be aware of public court filings against their investment companies. (Dkt. 38 at 17.) Under this reading of *1-800 Contacts*, the Court reasons that this ongoing monitoring is required and that investors should be aware of any singular case filed against companies in which they invested. From this interpretation of the law, the Court reasoned that Defendants, as investors, have reason to track Farmers Edge. (*Id*.) Therefore, at the moment Plaintiff filed its accusations against Farmers Edge in Virginia, over eight hundred miles away from Defendants' place of business, Defendants "had reason to know" of the new litigation and were on inquiry notice to investigate Plaintiff's trade secret misappropriation claims against Farmers Edge. (*Id*.)

Defendants respectfully submit that the Court committed clear error in its application of *1-800 Contacts* to Plaintiff's allegations in this case. In *1-800 Contacts*, defendants asserted that class action plaintiffs' antitrust claims were time-barred and ineligible for tolling because plaintiffs were on inquiry notice of their claims upon the public disclosure of settlement agreements, court proceedings, and an SEC filing. *1-800 Contacts*, 2018 WL 2271024 at *35. Critically, in *1-800 Contacts*, the court found the consumer-plaintiffs were not on notice merely because a civil lawsuit was filed. *Id.* at *36.

Instead, the court found that investors are only presumed to have knowledge of litigation against their investment companies when information "reasonably accessible to the ordinary investor" gives them notice of potential wrongdoing. *Id*. Information is only considered "reasonably accessible" when the specific allegations are either disseminated in widely read news articles or promulgated from multiple sources such as regulatory filings, multiple lawsuits, and

6

press reports. *Id.* Accordingly, *1-800 Contacts* does not support the idea that investors must be aware of every lawsuit filed against their investment companies. In fact, the *1-800 Contacts* court actually rejected such a proposition, specifically rejecting the idea that a singular lawsuit and federal filing could provide the requisite notice. The court stated it is "[o]nly by operation of a legal fiction [that] the filing of a private lawsuit by an unrelated party in a different vicinage put consumers on notice as a matter of law[.]" *Id.* at *37.

When correctly applying the *1-800 Contacts* case to the allegations here, the Virginia litigation was not "reasonably accessible" or even on the radar of a reasonable investor—it was a single lawsuit filed by an unfamiliar plaintiff in a different area of the country. Plaintiff's Complaint alleges that Defendants are consumers of Farmers Edge products, and that Odyssey invested in Farmers Edge prior to the Virginia litigation. (Dkt. 1 at ¶ 71.) The pleadings do not contend that there was widespread media coverage of Plaintiff's allegation or that any party provided Defendants with actual notice of the lawsuit. And though "[i]n the proper circumstances, even rumors or vague charges would suffice to put a reasonable investor on notice," *Caprin v. Simon Transp. Servs., Inc.*, 99 F. App'x 150, 156 (10th Cir. 2004), the Complaint does not allege Defendants' awareness of rumors, vague charges, widespread publicity, or any other means by which Defendants plausibly would have been made aware of the Virginia litigation's filing.

As such, it would have required far more than reasonable diligence for Defendants to regularly monitor nationwide court filings, and then catch that Plaintiff filed allegations against Farmers Edge in the Eastern District of Virginia. Much like the investors referenced in *1-800 Contacts*, without the revelation of "significant material facts" being "disseminated through press releases, news reports, and multiple complaints," Defendants had "no reason to know" of the Virginia litigation and no inquiry notice of potential wrongdoing by Farmers Edge. *1-800*

7

*Contacts*, 2018 WL 2271024, at \*36–37.

Next, the Court relied on *Metallurgical Industries, Inc. v. Fourtek, Inc*., 790 F.2d 1195 (5th Cir. 1986) to support its conclusion that the Virginia litigation put Defendants on notice. Respectfully, the facts in *Metallurgical* and the facts pled here result in two different legal outcomes. In particular, the *type* of notice Defendants allegedly received of the Virginia litigation and the *timing* of investment in relation to Plaintiff's trade secret allegations lodged in the Virginia litigation should alter the Court's legal findings.

In *Metallurgical*, a group of employees learned how to modify a zinc recovery furnace from their employer's client. *Id.* at 1197. Soon thereafter, the employees left their employer and began talks to build a zinc recovery furnace with these modifications for defendant Smith. *Id.* at 1198. During their discussions, one of the employees informed Smith that Metallurgical was currently suing the employees for trade secret misappropriation but reassured Smith that Metallurgical's claims were meritless. *Id.* at 1204. Despite being put on actual notice, Smith decided to move forward and create a new business relationship with the alleged misappropriator. *Id*. As a result, the *Metallurgical* court found that "Smith might therefore be held accountable" for trade secret misappropriation. *Id.* at 1198.

Unlike in *Metallurgical*, Plaintiff's Complaint here includes no allegations of actual notice of the Virginia litigation. Second, as alleged in Plaintiff's Complaint, Defendants' business relationship with Farmers Edge predated any of the misappropriation allegations lodged by Plaintiff when it filed the Virginia litigation in July 2021—Plaintiffs cite to a January 2021 press release announcing a partnership between Hudson and Farmers Edge. (Dkt. 1 ¶¶ 53-57, 72-73.) Because the facts pled in Plaintiff's complaint are inapposite to the factual circumstances considered by the Court in *Metallurgical*, Defendants respectfully submit that the Court clearly

erred in applying it to the instant case.

Finally, the Court cites to *Pie Dev., L.L.C. v. Pie Carrier Holdings, Inc.*, 128 F.4th 657 (5th Cir. 2025) ("*Pie II*"). (Dkt. 38 at 18.) It likewise does not support the Court's legal finding, and instead supports Defendants' positions in this motion. There, plaintiff sued one set of defendants for misappropriation in one case—*Pie I*—and then sued two more defendants for misappropriation of the same trade secrets in a separate case—*Pie II*. *Id.* at 665. The court dismissed *Pie I*, finding that the complaint did not plausibly plead the existence of trade secrets. *Id.* at 660. The defendants in *Pie II* then moved to dismiss under Rule 12(b)(6), which the district court granted. *Id.* at 661. The Fifth Circuit found that defendants were entitled to rely on a finding of no trade secrets that was "finally determined by a court of competent jurisdiction." *Id.* at 664–65. Similar circumstances exist here, where all of Plaintiff's misappropriation allegations against Farmers Edge have been dismissed. *See infra* at 9.

### C.    Affirming the Court's Order Would Work Manifest Injustice

If the Court's application of the law remains undisturbed, the resulting burden sets an unworkable and impractical standard for investors and companies nationwide. As it currently stands, each and every arms-length investor will be expected to continually monitor companies in which it invested for any allegations of trade secret misappropriation or risk being liable for those acts.  Further, this duty would last in perpetuity from the moment an investment is made. As one example: Company A invests in Company B, and then uses a product or service provided by Company B to provide services to Company A's customers for 5 years. Under the current order, Company A would be required to constantly monitor countless federal and state court dockets nationwide, not only for legal actions taken against Company A, but also for any allegations lodged against Company B. And if, after 5 years of the parties' relationship, Company B was sued for trade secret misappropriation by another third party, Company A would be at a crossroads—either

(1) commit significant resources to analyzing the third parties' allegations and assess the claims and risk associated with the same, likely based only on information that is publicly available and in the face of Company B's denials, before they had been proven in the Court of law, or (2) mitigate its risk by severing ties with Company B and ceasing all use of the product or service provided by Company B. Either result is untenable, as it would either require significant investments in time, resources, and money to assess risk in a case in which Company A is not even involved or significantly disrupt Company A's product offerings, customer service, and overall business operations that had relied on Company B's product or service for years—*all based on unproven allegations*. Defendants respectfully request the Court reconsider its Order to prevent such manifest injustice.

Finally, new evidence and developments in the Canada litigation[4] further exemplify the manifest injustice to Defendants in this case. On September 11, 2025, the Manitoba court dismissed, in their entirely, Plaintiff's trade secret allegations against Farmers Edge. *Farmers Edge Inc. v. Precision Weather Sols. Inc*., No. CI 15-01-99336, 2025 MBKB 113, ¶ 24 (Can. Man. Ct. K.B. Sept. 11, 2025) (dismissing trade secret claims), *available at* https://canlii.ca/t/kfgtr.[5] The Manitoba court's order recognized the filing of the instant litigation and while it "was unaware of its status" the court expressly stated "the Manitoba counterclaim underpins it" and "[t]he basis of . . . liability and damages are the same." (*Id.* at ¶¶ 7–8, 50.) Ultimately, the issue before the Manitoba Court was how to remedy Plaintiff's "failure to deliver answers and evidence central to

---

[4] *Farmers Edge Inc. v. Precision Weather Sols. Inc*., No. CI 15-01-99336 (Can. Man. Ct. K.B. Sept. 11, 2025) (the "Canada litigation").

[5] Under D. Kan. L.R. 7.3(2), the availability of new evidence supports a motion for reconsideration. Further, just as the Court took judicial notice of the Canada litigation filings provided in conjunction with Defendants' motion to dismiss (Dkt. 38 at 24-25.)), the Court should do the same for the Canadian court's September 11 Order.

10

[Plaintiff's] infringement claim." (*Id.* at ¶ 22.) Specifically, Plaintiff failed to "precisely detail[] the intellectual or confidential property at issue and the basis for claiming it is proprietary, confidential, or secret" (*Id.* at ¶ 23), and its noncompliance was "repetitive, extensive and, most critically, material in that much of it deals with vital points central to the infringement claim," which the Court noted "appear[ed] to be the result of forum shopping in the USA." (*Id.* at ¶¶ 38, 48.) Without reconsideration, Plaintiff will be allowed to continue propagating its scheme of filing duplicative lawsuits against every Farmers Edge investor, partner, or customer they can plausibly impute knowledge to—all while never actually proving that Farmers Edge ever misappropriated Plaintiff's technology in the first place. Odyssey and Hudson face the prospect of having to defend claims of trade secret misappropriation by Farmers Edge, when Farmers Edge already has itself successfully defended against those claims.  Respectfully, allowing Plaintiff another bite of the apple by allowing such duplicative litigation to proceed is yet another example of the manifest injustice to Defendants should the Court not reconsider its order.

## III.    CONCLUSION

For these reasons, Defendants respectfully request the Court reconsider its ruling regarding Defendants' Motion to Dismiss and grant Defendants' Motion to Dismiss in its entirety.

11

Dated: October 2, 2025

Respectfully submitted,

/s/ *Maxwell C. McGraw*
Maxwell C. McGraw (D. Kan. 79205)
B. Trent Webb (KS 15965)
SHOOK HARDY & BACON LLP
2555 Grand Blvd
Kansas City, MO 64108-2613
Phone: 816-474-6550
Fax: 816-421-5547
mmcgraw@shb.com
bwebb@shb.com

***Counsel for Defendants***
***Hudson Insurance Company and***
***Odyssey Group Holding, Inc.***

12